## Carroll v. Carroll
### [Cite as 2 AOA 321]

Case No. 89-C-1
Columbiana County, (7th)
Decided June 28, 1990

R.C. 2317.02
R.C. 3105.18
Civ. R. 53
Civ. R. 54(A)

Louis E. Katz, Esq., 70 McKinley Way West Poland, Ohio 44514, For Plaintiff-Appellant.

C. Ashley Pike, Esq., 115 North Beaver Street Lisbon, Ohio 44442, For Defendant-Appellee.

DONOFRIO, J.

This is an appeal from the Court of Common Pleas of Columbiana County, Ohio, division of domestic relations.

Plaintiff-appellant, James T. Carroll, and defendant-appellee, Janet O. Carroll, were divorced on September 22, 1987. The proceeding was not contested, both parties appearing with their respective counsel and testifying. Appellant was represented by Attorney Mark Yajko.

An additional proceeding came before the court referee on August, 19, 1988, pursuant to a motion filed by appellee to have appellant held in contempt for failure to cooperate in the sale of the parties' marital residence. Appellee claimed she had exercised the option contained in the divorce decree permitting her to purchase appellant's interest. The memorandum of appellee contained an affidavit of appellant's former counsel, Attorney Yajko. It was the claim of appellant at the referee's hearing that the appellee had waited too long to exercise the six-month option given her in the decree. Further, appellant claimed that the calculation as to the amount due appellant for his interest in the property was incorrectly done by the referee.

The pertinent portion of the trial court's original judgment is as follows:

"It is ordered that the Defendant shall have exclusive possession of the premises on Township Line Road near Wellsville, Ohio. The same shall be sold at a mutually agreed price. From the expenses of the sale shall be paid the mortgages on the premises with the exception of the indebtedness of the pool which shall remain the full and complete responsibility of the Defendant who agrees to hold the Plaintiff harmless thereon. Also from said proceeds there shall be paid to the party who continues to make the mortgage payments on the premises complete reimbursement for those expenses.

The Defendant is hereby granted the option to purchase at the appraised price the Plaintiff's interest in the premises; namely Thirty percent (30%); providing the same is exercised not later than six (6) months from the date hereof. In the event the parties fail to sell the premises within that time period or also that the Defendant fails to purchase the Plaintiff's net equity share in that time period, then the property shall be offered for sale at public auction with the apro-

ceeds divided as previously recited as if the same had been sold at private sale."

Appellant assigns six errors by the trial court. The first two are interrelated and we will address them together. They are:

"I. It was prejudicial error for the referee to use as a factual finding the affidavit of Mr. Carroll's former attorney. The use of such affidavit is in violation of O.R.C. 2317.02(A) and the attorney-client privilege.

"II. It was prejudicial error for the referee to use as a factual finding an affidavit attached to an attorney's memorandum when the opposing party was not given an opportunity to cross-examine the affidavit."

R.C. 2317.02(A) states:

"Sec. 1317.02 Privileged communications and acts.

"The following persons shall not testify in certain respects:

"(A) An attorney, concerning a communication made to him by his client in that relation or his advice to his client, except that the attorney may testify by express consent of the client or, if the client is deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of the deceased client and except that, if the client voluntarily testifies or is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the attorney may be compelled to testify on the same subject;"

Appellant argues that the use by appellee of an affidavit from the former attorney of appellant violates the above code section as to attorney-client privilege. Essentially, privileges bar from disclosure confidential communications made between the relationship wherein privileges are granted. The purpose of such privileges is to encourage uninhibited communications between persons standing in a relation of confidence and trust, such as an attorney-client relationship. However, the traditional policy of the law is to require the disclosure of all information by those in possession of it in order that the truth may be discovered and justice prevails. The granting of privileges from disclosure of the truth constitutes an exception to this general rule and the courts will strictly construe such privileges and to narrow their scope since obstruct discovery of the truth. The affidavit in question states:

"Now comes Mark A. Yajko, being first duly sworn, and states that:

"1. He is an Attorney at Law and licensed to practice in the State of Ohio;

"2. He was counsel of Record for the Plaintiff herein at such time as the Decree for Divorce was entered in September, 1987;

"3. As Counsel for the Plaintiff, I was fully familiar with the fact that Attorney C. Ashley Pike, Counsel for the Defendant, had access to the funds represented by the attached Exhibit 'A' and that the funds were available to the Plaintiff within the time period specified in the Divorce Decree for the exercise of the Defendant's option to purchase the marital premises. Additionally, the fact that the funds were available was conveyed to the Plaintiff herein during a conference between Mr. Carroll and myself in my office.

"4. However, due to the fact that the Plaintiff was making to the Defendant a monetary offer for her share of the marital premises, even though he did not have an option to do so under the Decree, Attorney Pike and I agree that the funds represented by the attached Exhibit should remain in his possession until such time as negotiations for the Defendant's share were either concluded or abandoned. It seemed foolish for him to send the monies to me only to have the same returned to him."

The information referred to in the affidavit is essentially between the appellant's attorney and the appellee's attorney, not between the attorney and client. The only portion of the affidavit which deals with communications between counsel and his client was: "* * * the fact that the funds were available was conveyed to the Plaintiff * * *." If we would consider that portion an improper disclosure, the rest of the information therein was not. Furthermore, appellee contends that the affidavit was merely corroborative and that her counsel was in a position to testify to the same information and so did before the referee at the hearing. This allegation points up a further problem that the appellant has herein, and that is that there is no record of any proceeding before the referee or the hearing on the objection to the referee's report before the trial judge. Therefore, we cannot determine that the information was not conveyed to the referee or to the trial court by other witnesses, such as the attorney for the appellee, in the form of testimony that is not presented to us in a transcript of proceedings.

For the foregoing reasons we overrule appellant's first assignment of error.

Appellant's second assignment of error complains that essentially the affidavit in question

under the first assignment of error was hearsay and that appellant was denied the right to cross-examine the affiant.

Again, we have a lack of a record to indicate objections at the time of the hearings and especially at the time of the hearing on objections before the trial court. Appellant's attorney on appeal was not the attorney at the time of the various proceedings at the trial court level. The case of *Oakbrook Realty Corp.* v. *Blout* (1988), 48 Ohio App. 3d 69, spoke to this issue. At pages 70-71, the court stated:

"Plaintiff maintains that the trial court erred in refusing to admit its affidavits because no objection was made to the admission of such evidence. Essentially, it is plaintiff's position that a trial court may not *sua sponte* exclude evidence for the reason that, had the defendant been present, and objection could have been made and sustained.

"* * *

"Generally, a trial court is vested with broad discretion in the admission or exclusion of evidence. See *State* v. *Hymore* (1967), 9 Ohio St. 2d 122, 128, * * * The Ohio Rules of Evidence embraced this concept in Evid. R. 611 (A). Thus, even in the absence of an objection, the trial court has the inherent power to exclude or strike evidence on its own motion. Cf. *Fisher Beverage Co.* v. *Teamsters Local Union No. 957* (Jan. 9, 1987), Clark App. No. 2253, unreported, at 4-6, and *Allen* v. *Pine Top Estates* (Dec. 18, 1985), Summit App. Nos. 12070 and 12164, unreported, at 9-10. See, generally, McCormick on Evidence (3 Ed. Clearly Ed. 1984) 143-144, Section 55. While in some cases a trial court is under a duty to admit or exclude evidence in the absence of an objection - see Eivd. R. 103 (D) (plain error) - in other cases the power to exclude or admit evidence *sua sponte* is discretionary with the court.

"Here, apparently the trial court concluded that it was *bound* to exclude plaintiff's affidavits because of the rule against hearsay. While a trial court *may* exclude such evidence, it is not required to do so in every case. This is especially true where the evidence excluded is a sworn statement such as an affidavit. See R.C. 2319.01 (A) and 2319.03; see, also, McCormick, *supra*. Inasmuch as the trial court concluded it was bound to exclude plaintiff's evidence as a matter of law, the trial court erred in failing to exercise its discretion. Plaintiff's sole assignment of error is, therefore, sustained."

If there was no objection to the introduction of the affidavit for the court's consideration, the trial court could have taken cognizance of the affidavit as evidence. Having no record before us, we cannot determine whether or not an objection was placed.

For the foregoing reasons, we overrule appellant's second assignment of error.

Appellant's third assignment of error states:

"It was prejudicial error for the referee to find that the option was validly exercised."

There appears to be no argument that there were negotiations between the parties so that appellant could purchase appellee's interest in the parties' marital home. Appellee's counsel held appellee's payoff check due appellant for appellant's share of the premises until negotiations were completed. Despite the fact that negotiations were unsuccessful to that point, appellee's check was forwarded to appellant's counsel.

Appellant cites *Noftsger Real Estate* v. *Berwanger* (1970), 26 Ohio App. 2d 90, for the proposition that in contract law an offer limited in time cannot be construed to charge the parties thereto after the time limit designated has expired. Appellant states that the option period was for six months and that tendering the check seventeen days after the expiration of the option period was untimely and not binding. Appellant was aware that appellee desired to exercise her option well within the time set forth in the judgment entry.

The divorce decree in this case did not specify any particular procedure for the exercise of the option to purchase the real estate on the part of the appellee. However, from what little we have before us in the form of a record, the indications are that appellant was aware that appellee's funds for the purchase were in the possession of appellee's counsel. Further, both counsel were aware that if appellant did not purchase appellee's interest, appellee would proceed to purchase appellant's interest. Appellee's counsel held appellee's check with appellant's counsel's permission until such time as the negotiations between the parties had broken down. Other than this, there is no record before us to substantiate the appellant's position that the option was not exercised in time by the appellee. We, therefore, overrule appellant's third assignment of error.

Appellant argues his fourth and fifth assignments of error together. They are as follows:

"IV. It was prejudicial error for the referee to allow Mrs. Carroll to deduct from the option price the mortgage payments made prior to the

option date in absence of authority to do so in the judgment entry.

"V. It was prejudicial error for the referee to allow Mrs. Carroll to deduct from the option price the mortgage, real estate tax, and insurance payments made after the option date."

Appellant argues, under these assignments of error, that the referee erroneously allowed the appellee to take certain credits against the option price.

In opposition, appellee argues that it is obvious that the court could only divide between the parties that which they owned, net equity in the marital premises.

Appellee contends payments made by the appellee during the pendency of the matter before the referee were designed to protect the property from foreclosure and thus preserve its value for division between the parties. Therefore, the taking into consideration of the appellee's payments on the mortgage and related expenses was indeed reasonable under the circumstances, and the referee acted quite properly in so finding.

The trial court's judgment entry at the time of the divorce specifically stated that the party who continued to make the mortgage payments on the premises was entitled to complete reimbursement for those expenses from the proceeds of the sale. The trial court further stated:

"* * * It is agreed and ordered that any expenses incurred to improve the property for purposes of sale shall be borne by the parties in proportion to their respective interests, namely Seventy percent (70%) and Thirty percent (30%)."

In light of the trial court's entry, it was well within the trial court's discretion to construe the various payments allowed as reimbursement as being designed to protect the property from foreclosure and thus preserve its value for division between the parties.

For the foregoing reasons, we overrule appellant's fourth and fifth assignments of error.

Appellant has filed a supplemental brief in which he includes a sixth assignment of error, as follows:

"VI. The purported 'judgment entry' in this case does not conform to Civil Rule 54(A) and, as such, does not adjudicate the rights of the parties and is a nullity."

Under this assignment of error, the trial court's judgment entry complained of state as follows:

"Plaintiff's objections to the Referee's Report are overruled. The Referee's Report is affirmed in whole.

"The Court adopts the Findings of Fact and Conclusions of Law of the Referee, and enters judgment thereon."

Appellant states that because the judgment entry of the trial court merely adopts the findings of fact and conclusions of law of the referee and enters judgment thereon, it is not within the parameters of Rule(A), which provides:

"'Judgment' as used in these rules includes a decree and any order from which an appeal lies as provided in R.C. 2505.02. A judgment shall not contain a recital of pleadings, the report of a referee or the record of prior proceedings."

Appellant cites *Wellborn* v. *K-Beck Furn. Mart, Inc.* (1977), 54 Ohio App. 2d 65, at 66, which states:

"* * * While the referee, pursuant to Civ. R. 53, may recommend a course of action for the court to follow, the court must reduce that recommendation to a judgment by a proper judgment entry. *Merely stating that the referee's report is approved does not constitute a judgment*. A judgment shall not even contain the report of the referee." (Emphasis added.)

Appellant cites many courts of appeals cases that are unreported, some of which have the statement that the referee's report is "approved;" others state such things as the referee's report is "adopted," whereas in the instant case the trial judge concluded with, "* * * and enters judgment thereon." Nevertheless, we find many of the cited cases from the various courts of appeals (there being six in number) to be persuasive, especially the case of *Walker* v. *Walker* (C.A. 9, 1987), Summit County Case No. 12978, unreported. In that case, the court gave a detailed analysis of the role of referees in domestic relations cases and, at page 6, held:

"What the referee does is not a judicial act. Therefore, can the judge by 'incorporating the referee's report' or by 'adopting the referee's report' raise the report to the status of a judicial act? The answer must be no. Aside from the fact that to do so would be the equivalent of allowing the referee to perform a judicial act, such incorporation or adoption of a judgment fails to meet the requirement of the certainty of judgments since it fails to disclose how the matter was resolved. Additional material, such as the referee's report, would have to be examined in order to understand the judgment,

as in the case here. Judgments must be independent, clear and complete."

It, therefore, appears that appellant's claim that the trial court's judgment entry does not adjudicate and articulately state the rights of the parties, has merit.

We, therefore, remand this matter to the trial court for the trial court to frame its judgment entry to specifically state its orders, which it adopted and approved from the referee's report.

The judgment of the trial court is affirmed in all respects excepting for the sixth assignment of error, wherein this case is remanded to the trial court to re-enter its judgment entry as stated herein.

*Judgment affirmed,*
*and cause remanded.*

O'NEILL, P. J., Concurs.
COX, J., Concurs.