DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Pickaway County Court of Common Pleas which held, inter alia, that Defendant-Appellant Mauritta Pfeifer violated the terms of a purchase contract she entered into with Ronald E. Bush by transferring a liquor license to a third party.
Appellant makes three arguments: (1) a liquor license is not property subject to the terms of a contract; (2) appellant was excused from performance of her obligations under the contract because Mr. Bush breached the contract; and (3) Mr. Bush abandoned the liquor license.
We find appellant's arguments lack merit and, therefore, we affirm the well-reasoned judgment of the trial court.
I. The Proceedings Below
This appeal arises from the sale and transfer of a bar and restaurant, Aces Tavern, from Defendant-Appellant Mauritta Pfeifer to Ronald E. Bush. Specifically at issue in this case is a liquor license that was agreed to be transferred to Mr. Bush as part of the sale and transfer. As Mr. Bush passed away prior to the commencement of this action, his wife, Marilyn Bush, who is also the executor of his estate, is the Plaintiff-Appellee in this case.
A. The Purchase Contract
In July 1996, Pfeifer sold Aces Tavern to Mr. Bush. In so doing, the two parties entered into two contracts: a purchase contract and a management contract. It is solely the purchase contract that contains the terms at issue in this appeal.
The purchase contract explains that the sale and transfer of the business was expressly conditioned on the successful transfer of the liquor license to Mr. Bush:
 [Pfeifer] agrees to sell and [Mr. Bush] agrees to purchase * * * the tavern and restaurant business * * * operated by [Pfeifer] as Aces Tavern * * * including * * * the valid liquor license held by [Pfeifer] * * *. * * *. As full payment for the transfer * * * [Mr. Bush] shall pay * * * $32,500. This purchase price shall be allocated equally among the assets as follows: good will, stock and trade, equipment, furniture, fixtures, and licenses. * * *. Upon the successful transfer of the liquor license, the funds shall be released to [Pfeifer] forthwith. Upon payment of the purchase price then due to [Pfeifer], [Pfeifer] shall deliver to [Mr. Bush] those instruments of transfer as are necessary to transfer to [Mr. Bush] the business and property * * *.
In fact, the contract specifically addressed the possibility that the transfer of the liquor license might fail. In a section entitled "Failure to Obtain Approval of Transfer of Liquor License," the following was set forth:
 In the event the parties shall be unable to obtain approval of the State of Ohio for the transfer of the liquor license currently held by [Pfeifer] to [Mr. Bush], this Agreement shall end and terminate, and all monies paid by [Mr. Bush] shall be returned to [Mr. Bush] and all instruments escrowed with the escrow agent shall be returned to the parties * * *.
Additionally, we note that the contract did not establish a deadline for the performance of the parties' obligations.
B. The Liquor License
Subsequently, Mr. Bush put the amount he was obligated to pay under the contract into escrow, and Pfeifer agreed to allow the liquor license to be transferred to Mr. Bush — but it was decided that Mr. Bush was to file the application for transfer with the Ohio Liquor Control Commission (OLCC).
Mr. Bush then assumed control of Aces Tavern. However, he was slow in filing the application to transfer the license. In fact, it took him three years to file the application.
In September 1999, just shortly after he had filed the application to transfer the license, and before OLCC had reviewed the application, Mr. Bush died.
In December 1999, OLCC reviewed and conditionally denied Mr. Bush's application. In a letter addressed to Mr. Bush, OLCC explained that the license would be granted if the following conditions were met by the end of January 2000: verification of the source of the funds Mr. Bush used to acquire Aces Tavern, a copy of Mr. Bush's agreement to lease the business premises, a fingerprint card and record-check fee for Ms. Bush, and the payment of all delinquent state taxes.
In January 2000, Pfeifer contacted Ms. Bush and explained that OLCC would terminate the liquor license, which was still in her name, if the back-taxes and a renewal fee were not paid.
Allegedly fearing that Ms. Bush would not act and the license might be terminated, Pfeifer paid the delinquent taxes and renewal fee herself. Then, "assum[ing] that the license had been abandoned," and without contacting Ms. Bush, Pfeifer transferred the license, and sold certain other business equipment not at issue in this appeal, to a third party.
C. The Trial Court
In June 2000, Ms. Bush filed a complaint against Pfeifer in the Pickaway County Court of Common Pleas. In the complaint, Ms. Bush prayed, inter alia, that the trial court would award the estate of Mr. Bush the money Pfeifer received from transferring the liquor license to the third party.
The case proceeded to a bench trial and the lower court held that the liquor license was transferred in violation of the purchase contract. Consequently, the trial court granted judgment in Ms. Bush's favor and awarded Mr. Bush's estate $20,174.46. We note that this award was the total amount Pfeifer received from the subsequent transfer of the liquor license, and certain other business equipment not at issue in this appeal, less the fee Pfeifer paid in renewing the license.
II. The Appeal
Subsequently, Pfeifer timely filed this appeal and assigned the following errors for our review.
First Assignment of Error:
 THE COURT ERRED IN RULING THAT THE LIQUOR LICENSE WHICH WAS THE SUBJECT MATTER OF THIS CASE WAS OWNED BY APPELLANT.
Second Assignment of Error:
 THE COURT ERRED BY ITS FAILURE TO FIND THAT PLAINTIFF'S DECEDENT BREACHED THE PURCHASE CONTRACT THEREBY RELEASING DEFENDANT FROM ANY OBLIGATION TO COMPLETE THE CONTRACT.
Third Assignment of Error:
 THE COURT ERRED BY ITS FAILURE TO FIND THAT PLAINTIFF'S DECEDENT ABANDONED THE LIQUOR LICENSE.
 A. Contracting for Transfer of a Liquor License
In Pfeifer's First Assignment of Error she argues that, because of the nature of a liquor license, it is not property, and, thus, it cannot be said that either party ever "owned" it. Accordingly, Pfeifer maintains, as it was not technically "owned" by either party, it was not error for her to then agree to transfer the license to a third party. We disagree.
1. Mischaracterization of Agreement
In support of her argument, Pfeifer relies on a decisional line of authority standing for the prospect that a liquor license is a privilege conferred by the state and is not a matter of right. See State ex rel.Zugravu v. O'Brien (1935), 130 Ohio St. 23, 196 N.E. 664. Thus, in keeping with this authority, a liquor license does not constitute property entitled to protection under the Due Process Clause. SeePapatheodoro v. Dept. of Liquor Control (1954), 69 Ohio Law Abs. 556, 118 N.E.2d 713.
We do not take issue with this line of authority. It is unquestionable that Ohio law holds that a liquor license does not create a property right within the constitutional meaning of the term. See, e.g., State exrel. Zugravu v. O'Brien, 130 Ohio St. at 23, 196 N.E. at 664.
The fundamental error in Pfeifer's argument is her characterization of the agreement as a sale of a liquor license from one "owner" to another. We agree that a holder of a license cannot transfer the license without the consent of OLCC. See R.C. 4303.29(A). Likewise, we agree that a party does not technically "own" a liquor license.
However, we do not find that this agreement was for the purchase of the liquor license in the sense that Pfeifer owned it outright and Mr. Bush was purchasing it. Rather, we find that the contract in the case before us is an agreement whereby Pfeifer, in exchange for a sum of money, was to agree to file with OLCC an application to transfer the liquor license to Mr. Bush. It is this promise, agreeing to apply for the transfer of the license, that is the bargained-for consideration at issue in this case. This is particularly clear given the length at which the purchase contract addressed the chance that OLCC might deny the application.
Accordingly, we turn to whether this agreement was proper within the confines of Ohio contract law.
2. Proper Contract Subject Matter
OLCC, in determining whether to grant a liquor-license application, considers, among other things, the number of issued and outstanding licenses, as well as the maximum number of licenses authorized to be issued. See, e.g., State ex rel. Mandalla v. Bryant (1951),156 Ohio St. 396, 102 N.E.2d 711. Thus, there is a finite number of licenses that OLCC might grant in a given geographical area.
The Ohio General Assembly empowered licensees, subject to rules promulgated by the OLCC, to transfer their liquor licenses. See R.C.4301.03(F). However, a holder of a license cannot transfer the license herself, but instead must transfer the license by filing an application to do so with OLCC. See R.C. 4303.29(A). And, just as OLCC has discretion to grant an applicant a liquor license, so too it has discretion to grant an applicant a transfer of that liquor license. See, generally, Gaetanov. Eppley (1938), 27 Ohio L.Abs. 155.
Thus, as there may be a finite number of licenses issued by OLCC in a given geographical area, it stands to reason that a party would find value in contracting for a liquor-license holder to file an application to transfer that license specifically to her. This is especially apparent when the contract is in connection with the sale of an establishment that serves alcohol — as is the case here. Such a transaction, of course, in no way affects the discretion of OLCC to grant the transfer.
It is long-standing law that consideration for a contract exists where the contract calls for a party to do that which the party is not legally obligated to do. See Rhoades v. Rhoades (1974), 40 Ohio App.2d 559,321 N.E.2d 242; Cohen Co. v. Messina (1985), 24 Ohio App.3d 22,492 N.E.2d 867. Here, Pfeifer agreed to file an application to transfer her license to Mr. Bush. She had no legal obligation to agree to this transfer, let alone to transfer the license specifically to Mr. Bush.
Our research did not yield a Supreme Court of Ohio or a reported-appellate opinion addressing the specific issue before this Court. However, the Second District Court of Appeals issued an unreported opinion that squarely stated, in addressing a contractual provision similar to the one before us, that "[t]he promise to transfer a liquor permit is, in and of itself, lawful consideration." Rentz v. Bannister
(May 31, 1995), Montgomery App. No. 15019, unreported; cf. ParamountFinance Co. v. United States (C.A.6, 1967), 379 F.2d 543 (holding that, although a license holder cannot transfer title to a creditor without the consent of OLCC, a liquor license does have unique value).
Further, we find numerous cases addressing, and enforcing, contracts for the transfer of a liquor license. See Oursler v. Metheney (1959), 179 N.E.2d 97; Reuter v. Hamilton (1950), 93 N.E.2d 43; see Shaker v. TheRussian Tea Room (July 27, 2000), Cuyahoga App. No. 77215, unreported;22810 Lakeshore Corp. v. XAM, Inc. (Oct. 8, 1998), Cuyahoga App. No. 73367, unreported (holding that the appellant failed to fulfill its contractual obligation to pursue a transfer of a liquor license);Bedritis v. Peirsol (Dec. 21, 1995), Franklin App. No. 95APE05-652, unreported; George v. First American Bank (Aug. 14, 1991), Lawrence App. No. 1973, unreported; Hoffman v. Gable (Dec. 9, 1991), Henry App. No. 7-90-10, unreported; Brown Deer Restaurant, Inc. v. New Mkt. Corp. (Mar. 28, 1985), Cuyahoga App. No. 48910, unreported; Fawcett v. Wright (Mar. 3, 1983), Knox App. No. 82-CA-16, unreported (finding that the "[a]ppellant breached the contract in failing to do those things necessary and proper to transfer the liquor permit"); Wodzisz v.Matthews (Apr. 8, 1980), Franklin App. No. 79AP-885, unreported (enforcing a contract to transfer a liquor license).
Therefore, based on the foregoing, we find that an agreement to transfer a liquor license is not prohibited by law, has value, and is the proper subject of a contract — notwithstanding the fact that OLCC retains complete discretion in granting such an application.
As an aside, we must point out the glaring irony in Pfeifer's argument: she has twice entered into the very agreement she now argues is unenforceable. To accept Pfeifer's argument would be to render the contract, at least in regard to the liquor-license transfer, illusory — because there would be no real promise to perform. See, generally, Glickman v. Coakley (Nov. 15, 1984), Cuyahoga App. No. 47997, unreported; Restatement of the Law 2d, Contracts (1981), Section 227. Further, to adopt her argument would also raise issues of fraud. See, generally, Haller v. Borror Corp. (1990), 50 Ohio St.3d 10, 13,552 N.E.2d 207, 211 (defining fraud in the factum as an "intentional act or misrepresentation of one party [which] precludes a meeting of the minds concerning the nature or character of the purported agreement").
We OVERRULE Pfeifer's First Assignment of Error.
B. Breach of Contract
In Pfeifer's Second Assignment of Error she argues that the trial court erred in failing to find that Mr. Bush breached the purchase contract, which thereby should have released Pfeifer from her performance obligations. Again, we disagree.
Pfeifer provides two bases to support her argument that the trial court erred in not finding that Mr. Bush breached the contract: (1) he failed to pay the entire amount required under the contract; and (2) he failed to successfully transfer the liquor license into his name.
Both of these bases amount to a challenge that the trial court's decision was against the manifest weight of the evidence. In reviewing the decision of a lower court, "[j]udgments supported by some competent,credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." (Emphasis added.) C.E. Morris Co. v. Foley ConstructionCo. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus; see Bechtol v.Bechtol (1990), 49 Ohio St.3d 21, 550 N.E.2d 178.
However, Pfeifer did not make a request, pursuant to Civ.R. 52, for findings of fact. A judgment entry may be general unless a party makes a specific request for separate findings of fact and conclusions of law. See Civ.R. 52. Here, the record reveals that neither party made such a request. Our review is circumscribed in the absence of findings of fact. See Pettet v. Pettet (1988), 55 Ohio App.3d 128, 562 N.E.2d 929. A party that fails to request findings of fact pursuant to Civ.R. 52 faces "an almost insurmountable `mountain' in carrying the burden of establishing that a judgment is against the manifest weight of the evidence * * *."Id. at 130, 562 N.E.2d 931. As such, "we must presume regularity in the proceedings below and affirm as long as there is some evidence from which the court could have reached the ultimate issue." In re Carter (Nov. 8, 1999), Butler App. No. CA99-03-049, unreported; see, also, Scovanner v.Toelke (1928), 119 Ohio St. 256, 163 N.E. 493, paragraph four of the syllabus; Meyer v. Anderson (Apr. 18, 1997), Miami App. No. 96CA32, unreported.
With the foregoing in mind, we will address Pfeifer's specific arguments.
1. Failure to Pay
Pfeifer makes the nonsensical argument that, "[Mr. Bush] breached the purchase contract by his failure to pay all the money due under the terms of contract," however, "[Pfeifer] will not attempt to argue that the [trial court's] finding on this issue is against the manifest weight of the evidence." (Emphasis added.).
If it is conceded that the record supports the trial court's factual finding that Mr. Bush paid the entire amount due under the contract, we are simply at a loss as to what Pfeifer's precise argument is in this regard. See, generally, Hawley v. Ritley (1988), 35 Ohio St.3d 157,519 N.E.2d 390 (explaining that an appellate court may rely upon App.R. 12(A) in disregarding an argument because the appellant failed to adequately brief the argument); accord Early v. The Toledo Blade (1998),130 Ohio App.3d 302, 720 N.E.2d 107. We see no need to address this argument further.
2. Failure to Transfer License
Pfeifer argues that, "[a]lthough [the contract] did not have a time period within which [Mr. Bush] was to effect the transfer of the license," it nevertheless took Mr. Bush three years to apply for the transfer and it was conditionally denied at the time he died. Thus, Pfeifer maintains, Mr. Bush effectively breached the contract.
Three uncontested facts completely resolve this issue: (1) the contract did not set forth a timeframe in which Mr. Bush was to commence the application process; (2) the application process was, in fact, initiated by Mr. Bush; and (3) the application was never unconditionally denied by OLCC.
a. Timeframe
Pfeifer readily concedes that the contract did not set forth a timeframe in which Mr. Bush was to commence the application process. Nevertheless, she concludes that the time period in which it took Mr. Bush to file the transfer application was unreasonable, and, therefore was an effective breach of the agreement.
Where no specific agreement has been made, the exact time for performance of an obligation is construed to be that which is "reasonable" under the circumstances. Naturally, "[t]he question as to what is a reasonable time within which to do an act is always a question of fact for the trier of fact * * *." (Emphasis added.) Guild Landis v. Jordan
(Jan. 14, 1981), Montgomery App. No. 6534, unreported; accord NoftsgerReal Estate, Inc. v. Berwanger (1970), 26 Ohio App.2d 90,269 N.E.2d 616.
Here, Pfeifer has simply failed to articulate why three years is unreasonable. Rather, Pfeifer merely makes the conclusory statement that three years is too long.
Appellants must include in their briefs: "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A)(7); App.R. 12(A); see Hawley v. Ritley,35 Ohio St.3d at 157, 519 N.E.2d at 390.
It is simply not the duty of an appellate court to search the record for evidence, let alone engage in pure speculation, to support an appellant's argument as to any alleged error. Simply put, "[a]n appellate court is not a performing bear, required to dance to each and every tune played on an appeal." State v. McGuire (Apr. 15, 1996), Preble App. No. CA95-01-001, unreported, affirmed (1997), 80 Ohio St.3d 390,686 N.E.2d 1112, following State v. Lorraine (Feb. 23, 1996), Trumbull App. No. 95-T-5196, unreported, discretionary appeal not allowed (1996),76 Ohio St.3d 1473, 669 N.E.2d 856.
Here, we find Pfeifer has failed to comply with App.R. 16(A) because she has failed to present "reasons in support of the contentions," and for her "lack of briefing." App.R. 16(A)(7).
b. Application
 Process Commenced; No Unconditional Denial
We will address the remaining two facts together — Pfeifer's acknowledgment that the application process was, in fact, initiated by Mr. Bush; and Pfeifer's acknowledgment that the application was neverunconditionally denied.
At the outset, we note that it is inaccurate, as Pfeifer has here done, to characterize the failure to get approval from OLCC for the transfer as a breach of contract. The reason being that the contract explicitly addressed such a situation: in that event, the agreement between the parties would be void, Aces Tavern would be returned to Pfeifer, and Mr. Bush would be completely reimbursed. Thus, if the parties failed to secure approval from OLCC for the transfer, there are contractual remedies in place. With this in mind, we will address Pfeifer's argument.
Here, the uncontested facts establish that the license-transfer application was conditionally denied by OLCC until the end of January 2000. It was only if certain conditions were not met by this deadline that the application would then be unconditionally denied. However, the undisputed facts establish that Pfeifer, before this deadline came to pass, unilaterally transferred the license to a third party.
Thus, two things can be said: it was never established that "the parties [were] unable to obtain approval of the State of Ohio for the transfer of the liquor license"; and, Pfeifer necessarily breached the contract.
Pfeifer's decision to transfer the license prior to the deadline imposed by OLCC left unanswered the question of whether the parties were unable to obtain approval from OLCC for the transfer of the liquor license. Thus, the proviso addressing this situation was never invoked and the contract was still in effect. And, as Pfeifer transferred the license to a third party while she was still bound by this agreement, she clearly breached the terms of the contract and the trial court was correct to impose the damages it did. We see no reason to address this argument further.
We OVERRULE Pfeifer's Second Assignment of Error.
C. Abandonment of the Liquor License
In Pfeifer's Third Assignment of Error she argues that the trial court erred in failing to find that Mr. Bush had abandoned the liquor license. We find this argument to be wholly without merit.
At the outset, we note that Pfeifer has inadequately briefed this argument as well. While this assignment of error does direct the Court to the record, it is entirely devoid of any legal analysis — not a single case or statute was cited in support of this assignment of error. See App.R. 16(A)(7); App.R. 12(A); see Hawley v. Ritley,35 Ohio St.3d at 157, 519 N.E.2d at 390. Nevertheless, we will briefly address the issues raised therein.
"Abandoned property is that property to which all rights have been intentionally, voluntarily, and absolutely relinquished without reference to any particular purpose or person." Akron v. Steelfox (July 7, 1982), Summit App. No. 10556, unreported, quoting 1 Ohio Jurisprudence 3d 7, Abandoned Property, Section 1. If property is abandoned, then a finder may then lay claim to it. See Steelfox, supra.
Thus, to succeed in an abandoned-property claim, it must be established that the property was intentionally abandoned by the true owner, who no longer claims any right to it. The classic example of abandoned property is items left in a garbage can.
Here, Pfeifer argues that, because "[Ms. Bush] took no action to renew or try to renew the liquor license," or pay delinquent taxes, that she was "entitled to assume that [Ms. Bush] had abandoned the license." Because, "with no cooperation from [Ms. Bush], [Pfeifer] had to do something."
Clearly, Pfeifer's argument does not meet the elements needed to show abandoned property. The simple fact that, at the time of Mr. Bush's death, and at the time Pfeifer transferred the license to a third party, there was a pending application to transfer the license into Mr. Bush's name, entirely disposes of Pfeifer's argument.
Further, it is difficult to imagine how a license could be abandoned by its holder. As we stated earlier, a holder of a license cannot transfer a liquor license without the consent of OLCC. See R.C. 4303.29(A). Thus, it would not seem possible that one could abandon — thus permitting a finder to lay claim to — a license, as only OLCC has the power to grant and transfer such licenses.
Further still, we note the incompatibility between this assignment of error and the First Assignment of Error. Abandonment is a pure property-law doctrine. It is difficult to comprehend how this argument stands given Pfeifer's earlier argument that a liquor license is not property at all. Moreover, Pfeifer has neglected to address how one might abandon that which she does not technically own.
III. Conclusion
For the foregoing reasons, Pfeifer's assignments of error are OVERRULED and the judgment of the Pickaway County Court of Common Pleas is AFFIRMED.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellee recover of appellant costs herein taxed.
This Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the Pickaway County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J., and Kline, J.: Concur in Judgment Only.