RHOADES, APPELLEE, *v.* RHOADES, APPELLANT.

[Cite as Rhoades v. Rhoades (1974), 40 Ohio App. 2d 559.]

(No. C-73507—Decided July 15, 1974.)

*Mr. William McD. Kite* and *Mr. Terrence A. Mire,* for appellee.

*Mr. H. J. Bressler,* for appellant.

*Per Curiam.* This cause came on to be heard upon the appeal; the transcript of the docket and journal entries; the original papers and pleadings from the Court of Common Pleas of Hamilton County, division of domestic relations; the transcripts of the proceedings; the assignments of error; and the briefs and arguments of counsel. The appeal is from the judgment of the court affirming certain orders of a referee.

The parties to this appeal were divorced on March 15, 1971, and the defendant was ordered to pay support for the two minor children involved in the case. Subsequently, the support order was amended to require defendant to pay $40 per week for each child's support. On August 22, 1972,

the defendant began to remit, through the court, only the sum of $25 per week for each child's support.

On May 1, 1973, a hearing was held before a referee of the court on the motion of the defendant for an order modifying the decree by reducing support payments and for an order establishing definite visitation periods, and upon the motion of the plaintiff for a lump sum judgment on arrearages in support.

The referee ordered the defendant, upon his motion, to pay $30 per week for each child's support, established visitation periods (which order is not involved in this appeal), and awarded plaintiff a judgment for total arrearages in support for the period beginning July 20, 1971, to May 1, 1973.

On October 19, 1973, the court heard the defendant's "appeal" from the orders of the referee pertaining to the support of the children and the lump sum judgment and affirmed the same, in toto.

Five errors have been assigned, the first of which reads:

"It was error for the court to order payment of a lump sum judgment in view of the undisputed testimony that there had been a previous agreement in which the parties agreed to reduce the amount of support."

Although defendant characterizes the testimony relative to the purported extrajudicial "agreement" between the parties, reducing support payments, as "undisputed," our perusal of the record indicates that such is not the case.

It appears that defendant had resigned his employment in this state to accept another position in Illinois at a sharply reduced salary. He testified that because of his reduced income he could not pay the support ordered by the court and telephoned plaintiff to so advise her. He claims that in that telephone conversation, secretly audited by a woman now the defendant's wife, he offered to pay the total sum of $50 per week (instead of $80 as ordered) and that plaintiff accepted the offer. Plaintiff, however, testified that while she recalled a telephone conversation in

which defendant told her of his inability to pay as ordered and his intention to remit a lesser amount, she did not make any agreement with him.

Defendant has cited to us a number of decisions treating with the law governing extrajudicial agreements between parents altering support orders made by courts, urging that the case of *Tressler* v. *Tressler* (1972), 32 Ohio App. 2d 79 "serves as a review of all the case law dealing with extrajudicial agreements."

*Tressler, supra,* involves an agreement whereby the father, in consideration of his executing and delivering to the mother a written consent to the adoption of their children by a stepfather, was released from the obligation to support the children imposed by the decree of divorce. The Court of Appeals affirmed a judgment of the Court of Common Pleas overruling the mother's motion for a lump sum judgment, even though the adoption never took place and the mother had divorced the stepfather, holding, at page 81, that "the execution and delivery of the written consent [to adopt] was not only performance but constituted valuable consideration for the plaintiff's promise to forego the weekly support payments." At page 80 of the opinion, we find the distillation of Ohio case law alluded to by defendant:

"It is established law in Ohio that as between a husband and wife, an agreement between them, for a valuable consideration, made subsequent to and different from the order of the court will be binding upon the wife in an action by her to recover unpaid installments of the court's child support award. *Schnierle* v. *Schnierle*, 33 Ohio Law Abs. 212; *Bidinger* v. *Bidinger, supra* [89 Ohio App. 274]; *McCabe* v. *McCabe*, 83 Ohio Law Abs. 19; *Blumberg* v. *Saylor*, 100 Ohio App. 479; and *Beiter* v. *Beiter*, 24 Ohio App. 2d 149."

We believe that *Tressler, supra,* pronounces accurately the law in Ohio bearing upon the subject with which we are concerned here. Consequently, we have searched the record to determine whether there is evidence sufficient to have required the referee and the court below to find that an

agreement had been made between the parties. Especially, we have searched for evidence to establish that there was consideration for any such agreement.

If, in the case at bar, the defendant gave up nothing, there could be no agreement. See *McCabe* v. *McCabe*, 83 Ohio Law Abs. 19.

It is elementary that neither the promise to do a thing, nor the actual doing of it will constitute a sufficient consideration to support a contract if it is merely a thing which the party is already bound to do, either by law or a subsisting contract with the other party. 11 Ohio Jurisprudence 2d 320, Contracts, Section 82.

All that we can perceive defendant here promised to do, and for all material purposes did, was to pay a sum less than that which he was already obligated to pay to plaintiff. Hence, there was no consideration sufficient to support the purported agreement even if plaintiff's testimony that she did not recall agreeing to defendant's proposal is brushed aside.

Upon this state of the record, viewed in light of the law as we comprehend it to be, we can find no error committed below in rendering the lump sum judgment and, therefore, the first assignment is not well taken.

The second assignment of error states:

"The Court and the referee erred in setting support payments at Thirty Dollars ($30.00) per week per child in spite of the agreement between defendant and plaintiff that they should be Twenty-five Dollars ($25.00) per week per child and further erred in ordering the defendant to pay Fifty-two Dollars ($52.00) per month Blue Cross and Blue Shield for medical payments for the children."

Although counsel for both parties discuss the matter of hospital care insurance in their briefs and addressed themselves to it in oral argument, we are unable to find any entry of a court order compelling defendant to make such payments which is a part of the orders from which this appeal is taken. It is true that testimony relative to the matter was given and that there was a subsequent colloquy between the referee and counsel with respect thereto, but

apparently no order was ever journalized. Consequently, we find that that part of the assignment of error is not supported by the record.

The arguments advanced in support of the assignment are, essentially, that an order of $30 per week per child for support is excessive and contrary to the weight of the evidence. For the reasons set forth in our ruling upon the first assignment, we find that there was no agreement between the parties to reduce the support payments. Therefore, our inquiry is whether the sum ordered by the referee and approved by the court is disproportionate when compared with defendant's income.

Again, we are compelled to observe that it appears from the record that defendant, by resigning one position to take another (perhaps in a fit of pique) occasioned, by himself, the $7,000 per year cut in income upon which he relies to justify his reduction of support.

More importantly, the record shows that defendant has again married and that, at the date of hearing, his wife was earning $1,500 more per year than he was. It is only fair to assume that her contributions to their joint costs of living reduced to some degree the defendant's expenses. On the other hand, plaintiff was unemployed at the time the court affirmed the referee's order.

We believe the law to be that minor children are third party beneficiaries of any provisions as to support which may benefit them and, as such, the benefits flowing to them ordinarily may not be modified by the parties to the contract to the detriment of the minors. See, *Smith* v. *Smith*, 7 Ohio App. 2d 4, at page 8.

Coupled with this principle is the observation of three distinguished jurists, Judges Hunsicker, Doyle and Middleton, in *Evans* v. *Evans*, 72 Ohio Law Abs. 29, at 29, 30 that: "It is the duty of a father to support his minor child, and this duty he owes to the State. From this duty owed to the State, he cannot relieve himself by contract with the mother."

Therefore, our examination of the record has been made with primary concern for the welfare of the children,

such welfare being the source of the state's concern in the matter. The best interests of the children have been measured against the apparent ability of the defendant to discharge his duty to them and to the state. We find no abuse of discretion manifest to us either in the determination by the referee that each child needed from its father $30 per week for support, or in the affirmance by the court of such determination. Accordingly, the second assignment is without merit.

The third assignment of error reads: "The referee erred in considering as part of the defendant's income out-of-pocket expenses for which he was reimbursed by his employer."

Defendant testified that his employer paid him, in addition to his salary, 12 ½ cents per mile to "cover the expense of me driving an automobile" and reimbursed him for certain other expenses incident to his activity as a salesman. He also testified as to his personal expenses, including therein costs of acquiring, maintaining and operating an automobile.

Since defendant listed his car as a source of expense in his effort to convince the referee that support payments should be reduced, we can find no prejudicial abuse of discretion on the part of the referee in taking account of the fact that the defendant's employer defrayed most of those particular expenses.

Suffice it to say that, upon the record, the assignment is without merit.

The fourth assignment states: "It was error for the court to admit evidence or to consider at all the earnings of defendant's present wife."

We alluded to this factor in our ruling upon the second assignment of error and those allusions are reiterated. It is clear that defendant's costs of supporting himself are reduced because he is living with a gainfully employed spouse. He must, then, be deemed to have a commensurably increased ability to contribute to the support of his children.

As we have already observed, the award of $30 per

week per child is not beyond the means of this defendant, when assessed upon the totality of the circumstances disclosed in the record.

The fourth assignment of error is not well taken.

The fifth assignment of error reads:

"It was error for the court in a motion for reconsideration and was an abuse of discretion on the part of the Judge for the Judge to refuse to review the transcript of the referee's hearing and also to refuse to review the memoranda of counsel."

Eminent among the cases cited to us in support of this protest are *Mennel Milling Co.* v. *Closser*, 140 Ohio St. 445, and *Currens* v. *Currens*, 26 Ohio App. 2d 215. *Mennel, supra*, clearly requires a court to consider exceptions and motions filed for the purpose of objecting to the report of a referee. See, paragraph one of the syllabus therein. The decision of this court in *Currens, supra*, mandates that a hearing be afforded to one who excepts to findings of a referee.

We are satisfied here that the court below conducted a hearing (evidenced by the transcript of proceedings held September 19, 1973, filed herein) and afforded defendant an opportunity to support his exceptions to the report of the referee.

The essential question in this case is the fariness of the support order, weighing the best interests of the children and the ability of their father to pay impartially. We can find no error in the method adopted by the court below. Our conclusion is that the court reached the correct result; that is, that the referee's findings were fair and just and should, accordingly, be affirmed, and that no prejudice to defendant is discernible as a consequence of its procedure. The assignment of error, then, is not well taken.

Much of this protracted litigation could have been avoided by the defendant. His action of taking matters into his own hands and out of the hands of his attorney has unnecessarily complicated and aggravated an already unhappy situation.

As a guidepost to others similarly inclined, we restate

here the laws established in paragraph two of the syllabus of *Corbett* v. *Corbett*, 123 Ohio St. 76.

"The proper practice in securing a modification of * * * [a] decree with respect to custody, care or support of * * * minors, is by motion filed in the original divorce action by the party seeking such modification."

The judgment of the Court of Common Pleas of Hamilton County, division of domestic relations, is affirmed.

*Judgment affirmed.*

HESS, P. J., SHANNON and PALMER, JJ., concur.