**Crow**
**v.**
**Crow**
*[Cite as 2 AOA 695]*

*Case No. CA89-06-087*
*Butler County, (12th)*
*Decided April 16, 1990*

R.C. 3109.05

*John F. Holcomb, Butler County Prosecuting Attorney, Patrick G. Moeller, 141 Court Street, Hamilton, Ohio 45011, for plaintiff-appellant.*

*Carl Morgenstern Co., L.P.A., Roger S. Gates, 604 First National Bank Building, Hamilton, Ohio 45011, for defendant-appellee.*

KOEHLER, J.

This case is on appeal from a judgment of the Butler County Court of Common Pleas, Domestic Relations Division, whereby the court made a finding that child support had been terminated by agreement of the parties.

Plaintiff-appellant, Marjorie M. Crow, and defendant-appellee, John Harrison Crow, were divorced on June 31, 1977. One minor child, Michelle, was born to the parties on November 13, 1971. Pursuant to the separation agreement incorporated into the dissolution decree, custody was granted to appellant, with appellee ordered to pay child support in the amount of $80 per month. Appellee was granted visitation rights.

During the year following the divorce, appellee exercised weekend visitation as well as regular evening visits. In the summer of 1978, appellant remarried and moved to Michigan with her daughter and a new husband. Due to Michelle's difficulty in adjusting to the move and to her new family situation, the parties began discussing increased visitation, expenses and child support. As a result, the parties agreed that frequent visits would be beneficial. Therefore, an agreement was negotiated whereby appellee's child support was suspended in order for greater visitation to occur between appellee and daughter.

Appellee faithfully and consistently visited his daughter. At first, the visits occurred two weekends every month which was later modified to one weekend. In 1981, appellant moved to Tucson, Arizona necessitating less frequent visitation. However, appellee still continued to visit his daughter six weeks during the summer months and two weeks at Christmas.

The evidence indicates that appellee expended over $27,000 on his daughter in connection with visitation since 1978. Appellant never demanded monies for child support during this period of time. Further, at the request of appellant in 1988, appellee did resume child support not including any alleged arrearages.

On December 20, 1988, a petition was forwarded to the Butler County Juvenile Court by the state of Arizona, Pima County Child Support Services, under the Uniform Reciprocal

Enforcement of Support Act (URESA). Subsequent to service of process, appellee filed a motion requesting the Butler County Domestic Relations Court to combine the URESA petition with the original divorce action, DR77-05-818, and assume jurisdiction over arrearage and current support issues. The court granted this motion and assumed jurisdiction.

The Butler County Domestic Relations Court heard this case on April 19, 1989. In an entry dated May 9, 1989, the court found that the parties terminated child support by agreement in 1978. Accordingly, the court below held that no arrearage was due appellant herein, but did increase the regular support obligation from $80 to $300 per month.

Appellant contends that there was never an agreement by the parties to modify the court's child support order and, as a result, now brings this appeal setting forth the following assignments of error:

First Assignment of Error:

"The Butler County Court of Common Pleas finding that an agreement existed between the parties to suspend child support payments was not supported by sufficient evidence and was against the weight of evidence."

Second Assignment of Error:

"Assuming that an agreement to suspend child support payments existed between former spouses, Butler County Common Pleas Court erred to the prejudice of Appellant in enforcing such agreement because the enforcement would be contrary to law and contrary to the best interests of the minor child."

Appellant, in her first assignment of error, asserts that an "agreement" to suspend court-ordered child support never existed between the parties and, therefore, is against the manifest weight of the evidence. We disagree.

The lower court in its opinion found that the parties agreed to suspend child support payments, as follows:

"Upon the testimony and the evidence, the court finds that the parties terminated child support by agreement in 1978. The reason for the termination was to allow John Crow additional money to spend in extensive visitation with his minor child. In reliance upon the agreement, Mr. Crow expended in excess of twenty-seven thousand dollars ($27,000) on visitation with his daughter between 1978 and 1988. When Mr. Crow was asked to resume child support he did so at the original level."

Appellant contends that the evidence presented was insufficient to support a finding

that an "agreement" had been entered into by the parties.

The evidence indicates that the parties through phone conversations desired to increase appellee's visitation with his daughter in order to help the child adjust to her new home and family situation. Due to the distance from Oxford, Ohio to either Ann Arbor, Michigan or Tucson, Arizona, travel expenses incurred by appellee would greatly increase. Therefore, forbearance of child support in exchange for frequent visits and time with the minor child was agreed to by the principals involved. This fact is buttressed by appellant's failure for a ten-year period to pursue such child support.

Judgments supported by competent, credible evidence going to all the essential elements of a particular action will not be reversed by reviewing court as against the manifest weight of the evidence. *Seasons Coal Co., Inc.* v. *Cleveland* (1984), 10 Ohio St. 3d 77; *C.E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279. The Court in *Seasons Coal Co., supra,* stated:

"We believe that an appellate court should not substitute its judgment for that of the trial court when there exists, as in this case, competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge. ***" *Id.* at 80.

Accordingly, we hold that the trial court's finding of an agreement between the parties altering the child support order was based upon competent, credible and substantial evidence in the record. Appellant's first assignment of error is not well-taken and is hereby overruled.

In her second assignment of error, appellant attacks the decision of the trial court contending that an agreement between parties to alter or suspend court-ordered child support is unenforceable and contrary to law. We cannot agree.

R.C. 3103.03 sets forth the duty of a husband to support the family:

"The husband must support himself, his wife, and his minor children out of his property or by his labor. ***

"Notwithstanding section 3109.01 of the Revised Code, the parental duty of support to children shall continue so long as the child continuously attends on a full-time basis any recognized and accredited high school, even when such child has attained the age of majority. ***"

Therefore, it would be improper and unreasonable to allow *parents* to absolve themselves of this duty of support by agreement subsequent to a court order. However, a spouse can relieve oneself from liability to the other spouse for support of their minor child by agreement. 47 Ohio Jurisprudence 3d (1983), 75, Family Law, Section 614. In essence, the support for a child is not terminated or abandoned, but instead is redistributed from one parent to another. See *Nelson* v. *Nelson* (Dec. 29, 1989), Lake App. No. 88-L-13-199, unreported.

It is well-settled in Ohio that an agreement between husband and wife for consideration, made subsequent and different from an order of the court, is binding in an action to recover unpaid installments of a court's child support order. *Rhoades* v. *Rhoades* (1974), 40 Ohio App. 2d 559; *Tressler* v. *Tressler* (1972), 32 Ohio App. 2d 79; *Beiter* v. *Beiter* (1970), 24 Ohio App. 2d 149.

Appellant argues as a matter of public policy that such agreements are not in the "best interest of the child." In the instant case, it is undisputed that the minor child received ample support from both appellant and appellee. The record is devoid of any evidence indicating that the minor child suffered financial hardship or difficulty. Thus, this action for child support arrearage appears to be of a personal nature rather than for the support or "best interest" of the minor child. Accordingly, an agreement fixing obligations between spouses is legally binding and enforceable.

Appellant further claims that the agreement was not supported by valid consideration. It is a fundamental principle of contract law that a promise does not constitute sufficient consideration to support a contract if it is something that the party is already bound to do. 17 Ohio Jurisprudence 3d (1980), 485, Contracts, Section 54; *Rhoades, supra.*

In the case *sub judice,* forbearance to institute legal process to modify the existing child support order, as well as increased visitation and other expenses, constitutes sufficient and valuable consideration on the part of this appellee. Therefore, the agreement is valid and properly enforceable against appellant.

The equitable doctrine of laches is relevant to our inquiry concerning appellant's cause of action, notwithstanding the existence of an agreement between the parties. "Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party. It signifies delay independent of limitations and statutes. It is lodged principally in equity jurisprudence." *Smith* v. *Smith* (1957), 107 Ohio App. 440, 443-444. In order to invoke laches, the following requirement must be established:

"Delay in asserting a right does not of itself constitute laches, and in order to successfully invoke the equitable doctrine of laches, it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim." *Smith, supra,* at 447; see, also, *Connin* v. *Bailey* (1984), 15 Ohio St. 3d 34; *Kinney* v. *Mathias* (1984), 10 Ohio St. 3d 72.

We find that appellant's failure to enforce the existing support order bars her from collecting any arrearage. Appellee has clearly been materially prejudiced. As a result of the agreement between the parties, appellee refrained from pursuing a child support modification and incurred substantial expenses in connection with the agreement benefiting the minor child. Thus, detrimental reliance by appellee, as well as material prejudice, renders the doctrine of laches applicable to preclude appellant's claim of child support arrearage.

Appellant's second assignment of error is not well-taken and is hereby overruled.

*Judgment affirmed.*

YOUNG, J., Concurs separately.

YOUNG, J., Concurring separately:

No doubt our decision today will be cited by those who seek to avoid child support arrearages by claiming an oral agreement to modify existed between the parties. I write separately only to emphasize, on the first assignment of error, that the narrow issue before us is whether the finding of the trial court was against the manifest weight of the evidence. There is plenty of competent, credible evidence to support the finding of the trial court that such an agreement existed, and this court may not substitute its judgment for that of the trial court.

As to the second assignment of error, the record shows that appellee expended $27,000 for the benefit of the child during the period of time that support payments were suspended by agreement. This factor, when combined with the other matters considered by the trial court, clearly establishes that the enforcement of the

agreement was not contrary to the best interests of the child.

JONES, P.J., Dissents.

JONES, P.J., Dissenting:

The majority has established a dangerous precedent of dubious validity in holding that a father can ignore a court order to support his minor child on the basis of an alleged oral agreement with the child's mother. There is no doubt that a support agreement can be modified by agreement between the parents, if done in writing and with the court's approval. An alleged oral agreement is highly suspect when claimed by a father who has been in default for ten years. Other written contracts cannot be altered by the unilateral assertions of only one of the contracting parties, and there certainly is no rule of law permitting an exception to a father in default of his agreement to support his child.

It is a fact of life that absconding fathers contribute greatly to the problems of welfare departments in providing aid to dependent children. The record reveals the father of the child in this case is well educated. It would have been an easy matter to express any modifications of the support agreement in writing. *Nelson* v. *Nelson* (Dec. 29, 1989), Lake App. No. 88-L-13-199, unreported, cited by the majority is distinguishable for that precise reason.

The child's mother in *Nelson, supra,* advised the court in writing on three separate occasions that support money was neither desired nor expected.

Although I cannot grant my imprimatur to the modification of written agreements absent unusual circumstances and a higher degree of proof, I must acknowledge that the doctrine of laches may at times be applicable. Laches, of course, was not the basis of the trial court's decision. The court simply found that child support was terminated by oral agreement, despite denial by the child's mother. Rest assured that any father who fails to support his children henceforth will claim an oral agreement to avoid payment of accumulated deficiencies. Finally, it is no defense to any order requiring support payments to assert, as here, that large sums were spent to send the child to Paris and other exotic places. Paris trips do not provide food and clothing for a growing child.