EXPEDITORS INTERNATIONAL OF WASHINGTON, INC., Plaintiff,

v.

CROWLEY AMERICAN TRANSPORT, INC., Defendant.

No. C:97CV350.

United States District Court,
S.D. Ohio,
Eastern Division.

Feb. 7, 2000.

Joseph M. Hegedus, Climaco, Climaco, Lefkowitz & Garofoli, Columbus, OH, Phillip A. Ciano, Phillip A. Ciano Co., L.P.A., Cleveland, OH, for plaintiff.

Thomas Louis Rosenberg, Ulmer & Berne, Columbus, OH, Daniel W. Raab, Daniel W. Raab, PA, Miami, FL, for defendant.

## OPINION AND ORDER

KING, United States Magistrate Judge.

This is a diversity action in which plaintiff asserts claims of breach of contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, negligence, fraudulent misrepresentation and concealment, conversion, breach of bailment and violation of the Pomerene Act, 49 U.S.C. § 80111(a)(2). Upon the consent of the parties, 28 U.S.C. § 636(c), this matter is before the undersigned on defendant's motion for partial summary judgment.

## I. Background

Plaintiff, Expeditors International of Washington, Inc. of Columbus, Ohio ["Expeditors"], is a freight-forwarder and customhouse broker which provides global freight-forwarding services to manufacturers and suppliers of various goods. (*Complaint*, at ¶ 1). Defendant, Crowley American Transport, Inc. ["Crowley"], is a Delaware corporation which provides global marine cargo handling services to various entities. (*Id.*, at ¶ 2).

In or about August, 1995, Expeditors entered into an agreement with Flxible Corporation of Delaware, Ohio ["Flxible"] under which Expeditors was to act as the freight-forwarder for the shipment of Flxible's buses from Delaware, Ohio to the Puerto Rico Metropolitan Bus Authority ["P.R.M.B.A."] in San Juan, Puerto Rico. (*Onofrio Affidavit attached as Exhibit C to Plaintiff's Memorandum contra Defendant's Motion for Partial Summary Judgment*, at ¶¶ 3–5). As a condition precedent to the agreement, Flxible granted Expeditors a contractual lien against its freight for all "charges, expenses or advances" incurred by Expeditors in connection with any shipments for Flxible. (*Exhibit 1 attached to Complaint*, at ¶ 15).

In order to carry out its duties under the contract with Flxible, Expeditors contracted with Crowley, whereby Crowley agreed to act as the maritime shipper for the ocean transport of the buses. (*Onofrio Affidavit*, at ¶¶ 6–8). Diana Bright, a salesperson for Crowley, was Expeditors' sole contact at Crowley regarding the contract. (*Bright Affidavit attached as Exhibit A to Plaintiff's Memorandum contra Defendant's Motion for Partial Summary Judgment*, at ¶ 14).

Between November 1995 and January 1996, Crowley shipped approximately 40 Flxible buses from Jacksonville, Florida to San Juan, Puerto Rico. (*Onofrio Affidavit*, at ¶ 13). However, Flxible became delinquent in December 1995 in its payments to Expeditors, and Expeditors enforced its lien against Flxible. On December 8,

1995, Expeditors contacted Diana Bright requesting that "any buses now in route to [Puerto Rico] be held by Crowley and NOT RELEASED until [Expeditors notifies] you otherwise...." (*Bright Affidavit*, at ¶ 22). Ms. Bright agreed to this request to hold the buses and communicated this information to Crowley's Puerto Rico office. (*Id.*, at ¶ 23). On December 11, 1995, Expeditors authorized the release of the buses. (*Id.*, at ¶ 25).

On January 3, 1996, Ms. Bright again received a request from Expeditors that Crowley hold buses then en route and not to release them until notified otherwise. (*Id.*, at ¶ 31). Ms. Bright again agreed to hold the buses, and communicated this information to Crowley's Puerto Rico office. (*Id.*, at ¶ 32). Throughout February and March, the Puerto Rico office advised Ms. Bright that the buses were still being held, and Bright passed this information on to Expeditors. (*Id.*, at ¶ 43). Sometime during Spring 1996, Expeditors contacted Ms. Bright and advised her that it had learned from Flxible that the buses has been released to the P.R.M.B.A., thereby extinguishing Expeditors' contractual lien over Flxible's freight. (*Id.*, at ¶ 46).

## II. Discussion

### A. Summary Judgment Standard

Defendant moves for summary judgment in regards to the amount of damages that plaintiff may recover from defendant in the event that the Court were to resolve the case in plaintiff's favor. Fed. R. Civ. R. 56© provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate if "there is no genuine issue as to any material fact...."

In making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251, 106 S.Ct. 2505.

### B. Carriage of Goods by Sea Act

Defendant contends that the Carriage of Goods by Sea Act ["COSGA"], 46 U.S.C.App. §§ 1300–1315, which limits a carrier's liability, applies to this action, having been incorporated into the bills of lading. Plaintiff argues that COSGA does not apply because its claims are based, not on the contract of carriage governed by the bills of lading, but rather on an entirely independent contract that arose subsequent to the issuance of the bills of lading, wherein defendant agreed to hold the buses until plaintiff authorized their release. Plaintiff further maintains that, even if COSGA does govern defendant's wrongful delivery of the buses, COSGA's $500 limitation of liability for cargo loss or damage does not limit plaintiff's damages to $500 per bus because the parties agreed prior to the shipments that the buses were valued in excess of $300,000.

■ COSGA governs "all contracts for carriage of goods by sea between the ports

of the United States and the ports of foreign countries." *Nippon Fire & Marine Ins. Co. v. M.V. Tourcoing,* 167 F.3d 99, 100 (2nd Cir.1999). *See also Royal Ins. Co. v. Sea–Land Serv. Inc.,* 50 F.3d 723, 726 (9th Cir.1994). Although COSGA does not espressly apply to bills of lading governing domestic or coastwise shipments, the parties may incorporate its terms into a contract of carriage. *See Lucchese v. Malabe Shipping Co., Inc.,* 351 F.Supp. 588, 591 (D.P.R.1972); *In the Matter of the Complaint of Norfolk, Baltimore & Carolina Line, Inc.,* 478 F.Supp. 383, 386 (E.D.Va.1979). "Section 13 of COSGA expressly authorizes the incorporation of COSGA into bills of lading governing domestic shipments, and further provides that any bill of lading which incorporates COSGA 'shall be subjected hereto as fully as if subject hereto by the express provisions of this chapter.'" *In re Norfolk,* 478 F.Supp. at 386 (citations omitted).[1]

▆▆▆ COSGA provides the exclusive cause of action for cargo loss or damage; the law explicitly covers tortious and contractual conduct. *See Crispin Co. v. Lykes Bros. S.S. Co.,* 134 F.Supp. 704, 706 (S.D.Tex.1955). When COSGA is applicable, no remedy exists under state law or general maritime law for breach of contract, negligence, or conversion. *See St. Paul Fire & Marine Ins. v. Marine Transp. Serv. Sea–Barge Group, Inc,* 727 F.Supp. 1438, 1442 (S.D.Fla.1989): *Na-tional Automotive Publications v. United States Lines,* 486 F.Supp. 1094, 1099, 1101–02 (S.D.N.Y.1980); *B.F. McKernin & Co. v. United States Lines,* 416 F.Supp. 1068, 1071 (S.D.N.Y.1976). Furthermore, COSGA "covers the period from the time when the goods are loaded [onto the ship] to the time when they are discharged[, or unloaded,] from the ship." *Robert C. Herd & Co. v. Krawill Mach. Corp.,* 359 U.S. 297, 300, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959). This period is known as "tackle to tackle." *See Mori Seiki USA, Inc. v. M.V. Alligator Triumph,* 990 F.2d 444, 447 (9th Cir.1993). However, the parties may contractually extend COGSA to cover the entire period during which the carrier has custody of the cargo. *See id.; Brown & Root, Inc. v. M/V Peisander,* 648 F.2d 415, 420 (5th Cir.1981); *Baker Oil Tools, Inc. v. Delta Steamship Lines,* 562 F.2d 938, 940 n. 3 (5th Cir.1977), *reh'g denied,* 571 F.2d 978 (5th Cir.1978).

▆▆▆ "Section 4(5) of COGSA limits liability of a carrier to $500 per package or customary freight unit, unless the shipper declares a higher value which is inserted onto the bill of lading, or unless the shipper was not given a fair opportunity to declare the higher value." *Aetna Ins. Co. v. M/V Lash Italia,* 858 F.2d 190, 192 (4th Cir.1988). *See also Acwoo Int'l Steel Corp. v. Toko Kaiun Kaish, Ltd.,* 840 F.2d 1284, 1288–89 (6th Cir.1988).[2] The penalty

---

1. Section 13 of COSGA provides in pertinent part:

 Nothing in this chapter shall be held to apply to contracts for carriage of goods by sea between any port of the United States or its possessions, and any other port of the United States or its possessions: Provided, however, That any bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea between such ports, containing an express statement that it shall be subject to the provisions of this chapter, shall be subjected hereto as fully as if subject hereto by the express provisions of this chapter: Provided further, That every bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea from ports of the United States, in foreign trade, shall contain a statement that it shall have effect subject to the provisions of this chapter.
 46 U.S.C.App. § 1312.

2. Section 4(5) of COSGA reads in pertinent part:

 Neither the carrier nor the ship shall in any event be or become liable for any loss or ·damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the ship-

for failing to satisfy the fair opportunity doctrine is "that a carrier loses the benefit of any limitation of liability to which it might otherwise be entitled." *General Elec. Co. v. MV Nedlloyd,* 817 F.2d 1022, 1028 (2nd Cir.1987). The Sixth Circuit has held that the incorporation of the language of § 4(5) into a bill of lading sufficiently provides a shipper with a fair opportunity to declare a higher value. *Acwoo Int'l,* 840 F.2d at 1288–89.

## C. Application
### 1. Contract in Effect at Time of Release

In the case at bar, the buses were to be shipped from a port in Jacksonville, Florida to a port in San Juan, Puerto Rico, a possession of the United States. Thus, the transaction was a coastwise shipment, which is treated as a domestic shipment. The pertinent part of § 4 of the bill of lading reads:

> This Bill of Lading is subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936 ("COSGA"), which are incorporated herein. The defenses and limitations of said Act shall apply to the goods whether carried on or under deck; whether the carriage of goods is in U.S. foreign trade, between United States ports, or between non-United States ports; before the goods are loaded on and/or after goods are discharged from the Vessel, and throughout the entire time the goods are in the custody or are the responsibility of the Carrier, whether acting as carrier, bailee, stevedore, or terminal operator.

*(Bill of Lading attached to Defendant's Supplement to Its Motion for Partial Summary Judgment,* at ¶ 4). Although COSGA did not by its express terms apply

to these domestic shipments, the bill of lading issued for each bus by the defendant incorporated COSGA as the law governing the contractual relationship between the parties. Section 4 of the bill of lading also contractually extended the coverage of COSGA beyond the usual "tackle to tackle" period to cover the "entire time the goods are in the custody ... of the Carrier...." Therefore, if the contract of carriage was the agreement in effect when defendant released the buses to P.R.M.B.A. without plaintiff's authority, rather than the alleged modification of the contract whereby defendant allegedly agreed to hold the buses, then COSGA would govern the outcome of this action.

Plaintiff contends that COSGA does not govern this case because the agreement that defendant allegedly breached was not the contract of carriage, *i.e.* the bills of lading, but rather an entirely distinct contract that arose when the two parties agreed that Crowley would hold the buses until plaintiff authorized their release, in effect modifying the parties' original agreement.

 The parties have not addressed which state's contract law governs their agreement. However, it is not apparent to the Court that the following basic principles of contract law would vary from state to state. "The general rule is that a modification of a contract requires the same elements of mutual assent and consideration that are necessary for the formation of contracts." *Porginski v. New Boston Dev. Co.,* No. 92CA2036, 1992 WL 388553, at *3 (Ohio Ct.App. Dec. 22, 1992). Therefore, in order to effectively alter the terms of a contract, a modification must satisfy the essential elements of contract formation, which include offer, acceptance, and

---

per before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

By agreement between the carrier, master, or agent of the carrier, and the shipper

another maximum amount than that mentioned in this paragraph may be fixed: Provided, That such maximum shall not be less than the figure above named. In no event shall the carrier be liable for more than the amount of damage actually sustained.

46 U.S.C.App. § 1304(5).

consideration. *See Helle v. Landmark, Inc.*, 15 Ohio App.3d 1, 8, 472 N.E.2d 765 (1984). Under Ohio law, consideration sufficient to support an enforceable modification must be "new and distinct" from that supporting the original contract. *Thurston v. Ludwig*, 6 Ohio St. 1, 6 (1856); *see also Richland Builders, Inc. v. Thome*, 88 Ohio App. 520, 527, 100 N.E.2d 433 (1950). "[S]imply agreeing to do what one is already under an obligation to do does not constitute new or separate legal consideration." *Coady Contracting Co. v. Brand Road Inv. Co.*, No. 88AP–986, at *4 (Ohio Ct.App. June 14, 1990) (citing *Rhoades v. Rhoades*, 40 Ohio App.2d 559, ¶ 1, 321 N.E.2d 242 of the Syllabus (1974)).

▊▊▊ The doctrine of promissory estoppel may sometimes render enforceable a modification not otherwise supported by consideration. The elements of promissory estoppel include a clear and unambiguous promise, foreseeability, and detrimental reliance. *Thatcher v. Goodwill Industries of Akron*, 117 Ohio App.3d 525, 540, 690 N.E.2d 1320 (1997). *See also Tersigni v. General Tire, Inc.*, 91 Ohio App.3d 757, 762, 633 N.E.2d 1140 (1993). If these requirements are met, and "injustice can be avoided only by enforcement of the promise," then an agreement unsupported by classic consideration may nevertheless be enforced. *McIntosh v. Micheli Restaurant, Inc.*, 22 Ohio Misc.2d 5, 6, 488 N.E.2d 1261 (1984).

▊▊▊ The bills of lading contain the parties' original contract of carriage, which was governed by COSGA. Plaintiff contends that the contract of carriage was later modified to require defendant to hold the buses until notified by plaintiff to release them. The mutual assent element for the formation of contracts is satisfied by the parties' circumstances: plaintiff informed Diana Bright that Crowley was not to release the buses, and she agreed. The issue arises, however, whether defendant's new promise was supported by some consideration from plaintiff. Although plaintiff relies on *Wabco Trade Co. v. S.S. Inger Skou*, 482 F.Supp. 444 (S.D.N.Y.1979), to support its contention that sufficient consideration existed to create a valid modification, the facts in this case are distinguishable from the facts of *Wabco*.

In *Wabco*, a carrier contracted to ship goods to Beirut, Lebanon; however, the goods were unexpectedly discharged in Greece due to political unrest in Lebanon. *Id.* at 445. The carrier notified the shipper of the delay, and indicated that it would ship the goods to Beirut "in the reasonably near future." *Id.* at 447. In response, the shipper asked the carrier to hold the goods in Greece until further notice, and the carrier agreed. *Id.* at 446. After holding the goods for approximately three months, the carrier shipped the goods to Beirut, where they were subsequently lost. *Id.* The district court concluded that the original contract of carriage had been terminated by the parties' mutual consent when they agreed that the carrier would hold the goods in Greece. *Id.* at 447. The new agreement was supported by sufficient consideration because the carrier had been concomitantly released from its duty to transport the goods to Beirut. *Id.* at 447 n. 3.

The carrier in *Wabco* had been released from its duty to ship the goods to the destination listed in the original bill of lading. Crowley, in contrast, was contractually required by the original bills of lading to ship the buses to San Juan, Puerto Rico. That obligation was not altered when it agreed to hold the buses. Therefore, Crowley was not relieved of any duty imposed on it under the original contract when it undertook the additional duty to hold the buses until ordered to release them by plaintiff. Moreover, plaintiff paid no demurrage for defendant's storage of its buses. Plaintiff can identify no consideration given to defendant to support the validity of this alleged modification.

▊▊▊ Defendant's additional agreement cannot be enforced under a theory of

promissory estoppel because plaintiff fails to meet the requisites of that doctrine. Although Ms. Bright allegedly promised that Crowley would hold the buses until Expeditors authorized their release, Expeditors has not identified any detriment incurred by it in reliance on defendant's agreement to hold the buses.

Because no consideration was given for defendant's agreement to hold the buses until authorized by plaintiff to release them, and because plaintiff did not rely to its detriment on this promise, that supplemental agreement is not enforceable. The parties were operating under their original contractual relationship, which was governed by COSGA, at the time defendant released the buses to P.R.M.B.A.

### 2. Damages

Plaintiff contends that, even if COSGA does govern the contractual relationship between the parties, its $500 limitation on liability is not effective because the parties negotiated and agreed that the buses would be valued at and insured for more than $300,000.

The parol evidence rule "is not a rule of contract interpretation, but is a rule of substantive law, which the forum state's legal precedence governs." *Tractor & Farm Supply, Inc. v. Ford New Holland, Inc.,* 898 F.Supp. 1198, 1203 (W.D.Ky.1995). *See also Ed Schory & Sons, Inc. v. Francis,* 75 Ohio St.3d 433, 440, 662 N.E.2d 1074 (1996). "[W]hen applicable, [the parol evidence rule] defines the limits of a contract. It fixes the subject matter for interpretation...." *Charles A. Burton. Inc. v. Durkee,* 158 Ohio St. 313, 324, 109 N.E.2d 265 (1952) (quoting 3 WILLISTON ON CONTRACTS 1813).

The parol evidence rule "prohibits a party who has entered into a written contract from contradicting the terms of the contract with evidence of alleged or actual agreements." *Ed Schory & Sons,* 75 Ohio St.3d at 440, 662 N.E.2d 1074. When the parties "have made a contract and have expressed it in a writing to which

they have both assented as the complete and accurate integration of that contract, evidence, ... of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." *Id.* Stated more plainly, if a subsequent written agreement is "complete and unambiguous on its face, parol evidence is inadmissible to show a contrary intent of the parties." *TRINOVA Corp. v. Pilkington Bros.,* 70 Ohio St.3d 271, 275, 638 N.E.2d 572 (1994). Thus, parol evidence is "inadmissible to vary the terms of a written contract." *Strickler v. Pfister Associated Growers, Inc.,* 319 F.2d 788, 789 (6th Cir.1963).

In the case at bar, the bills of lading include an integration clause which provides, "All prior agreements or freight engagements for the shipment of goods are superseded by the Bill of Lading." *(Bill of Lading attached to Defendant's Supplement to Its Motion for Partial Summary Judgment,* at ¶ 1). Therefore, the terms listed in the bills of lading are those governing the parties' contract, and plaintiff may not present evidence suggesting terms that contradict the written terms of the bills of lading.

Plaintiff argues that the COSGA limitation of liability for cargo loss does not apply to this case, despite its explicit incorporation into the bills of lading, because the parties agreed prior to the issuance of the bills of lading that the buses had a value in excess of $300,000. Plaintiff contends that this previous agreement permits plaintiff to recover more than the $500 allowance provided for by COSGA and the bills of lading. However, § 16 of the bills of lading limits the defendant's liability for cargo loss or damage consistent with COSGA:

Carrier's liability may be modified by the declaration by Shipper of higher ad valorem values and by the payment of higher ad valorem charges according to the applicable tariff.... If the goods move under the published tariff rate,

Carrier shall not be liable in any event in an amount exceeding $500 (USD) per package, or in the case of goods not shipped in packages, per customary freight unit.

(*Bill of Lading attached to Defendant's Supplement to Its Motion for Partial Summary Judgment,* at ¶ 16). It does not appear that plaintiff declared the actual value of the buses in the "Declared Value" section of the bills of lading, nor does it appear that plaintiff paid a higher rate for the shipment of the buses. Thus, plaintiff's evidence alleging that plaintiff can recover damages in excess of $500 contradicts the express terms of the bills of lading, and constitutes parol evidence, which is inadmissible to vary the terms of the bills of lading.[3] Therefore, the $500 limitation of liability for cargo loss or damage is applicable to this suit.

### III. Conclusion

Defendant's motion for partial summary judgment is **GRANTED.** Plaintiff's claims are governed by the Carriage of Goods by Sea Act, 46 U.S.C.App. §§ 1300–1315.

---

**3.** Plaintiff's argument also fails under COSGA. That law requires the declared value to be inserted in the bill of lading to be effective. *See Marine Transp. Serv. Sea–Group Inc.,* 16 F.3d at 1141. "The shipper must declare the value of its cargo on the face of the bill of lading, not on some other related documents" if it intends to avoid the limitation of carrier liability for lost or damaged cargo. *Id.* Thus, a value declaration that is listed in a document other than the bill of lading is irrelevant. *See Southwestern Sugar & Molasses Co. v. River Terminals Corp.,* 360 U.S. 411, 420 n. 9, 79 S.Ct. 1210, 3 L.Ed.2d 1334 (1959) ("Where such statutes apply of course no agreement in derogation of them, even if embodied in a tariff, is valid."); *Mack Trucks, Inc. v. Farrell Lines,* No. 89–CIV–1946, 1990 WL 3926 (S.D.N.Y. Jan.16, 1990) (a declaration of value in a dock receipt is irrelevant); *Unimac Co. v. C.F. Ocean Serv. Inc.,* 43 F.3d 1434, 1438 n. 7 (11th Cir.1995) (a declaration of value in the shipping instructions or in the conunercial invoice accompanying the bill of lading are irrelevant).